UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR ISAAC CORPORATION<br>*Plaintiff,*<br>v.<br>SOFTWARE AG<br>*Defendant.* | 14 CV 7248<br><br>CIVIL ACTION NO. _____  |

## COMPLAINT

Plaintiff Fair Isaac Corporation ("FICO") files this complaint against Software AG ("SAG") for copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, accounting, and unfair competition. FICO hereby alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, accounting, and unfair competition. It arises out of SAG's breach of a written Technology License and Distribution Agreement, dated March 11, 2010, between FICO and SAG ("TDLA"), regarding SAG's licensing and distribution of FICO Decision Management Tools software.

### THE PARTIES

2. On information and belief, SAG is a German corporation with its principal place of business at Uhlandstraße 12, 64297 Darmstadt, Germany.

3. FICO is a corporation organized under the laws of the State of Delaware, with its principal place of business at 181 Metro Drive, San Jose, CA 95110.

## JURISDICTION AND VENUE

4. This action arises under the Copyright Act, 17 U.S.C. §§ 101, et seq., and the common laws of the State of New York. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

5. In the alternative, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs, and is between a citizen of a state and a citizen of a foreign state.

6. Venue is proper in this judicial district pursuant to a forum selection clause in the TDLA. SAG has expressly consented to venue and jurisdiction in this Court for any actions arising out of, or relating to or in any way connected with the TDLA. (TDLA, Terms and Conditions, ¶ 13.6). Venue is proper in this District, and the Court has personal jurisdiction over SAG by virtue of these facts.

## BACKGROUND

### A. Party Overview

7. FICO, which is based in California, is a world leader in the design and development of predictive analytics and decision management software. FICO provides products and services that enable businesses to automate, improve and connect decisions to enhance business performance. FICO's decision management software tools are used by businesses to build their own tailored decision management applications.

8. Part of FICO's decision management software tools is the FICO® Blaze Advisor® business rules management system ("FICO Blaze Advisor"), which is used to design, develop, execute and maintain rules-based business applications.

9. SAG is a software integrator and developer, which provides a variety of software platforms including its Integration Platforms, based upon webMethods. SAG's webMethods platform employs FICO Blaze Advisor as its rules processing engine, pursuant to the terms of the TDLA.

**B.   The TDLA**

10. On March 11, 2010, FICO and SAG entered into the TDLA, pursuant to which FICO granted to SAG licenses to the FICO Decision Management Tools software, including FICO Blaze Advisor. The licenses granted to SAG included a license to distribute and sublicense the FICO Blaze Advisor software to end users.

11. Under the terms of the TDLA, SAG may market the FICO Blaze Advisor software as part of either an "Embedded" or "Bundled" version of SAG's software. If marketed as an "Embedded Version," the license of FICO Blaze Advisor is limited as follows: "Use of the Blaze Advisor Integrated Development Environment ("Restricted IDE") is limited to use solely for the purpose of deploying rule services within the SOFTWARE AG software product, and that the Restricted IDE contains a technical limitation that limits the use of the Restricted IDE to the creation and deployment of no more than 250 rules per rule service ("Maximum Rule Count"). In use of the Restricted IDE, the user shall comply with the following restrictions on the volumes of rules that may be created and deployed using the Restricted IDE: (a) each step of a business process can invoke only a single rule service; (b) a rule service can be comprised of no more than the Maximum Rule Count; and (c) a rule service cannot invoke any other rule service.

3

["Maximum Rule Limit"] Without limiting the foregoing, the user shall not separate or sequence any rule or set of rules related to or part of the same or similar rules for any rule service or business process for purposes of or that results in the circumvention of the Maximum Rule Count, including, but not limited, to changing or manipulating the stack or sequence of rules or rule service calls." ["Anti-Circumvention Provision"] TDLA ¶ II(a).

12. The license fee for SAG's distribution and sublicense of the Embedded Version of FICO Blaze Advisor, subject to the Maximum Rule Limit, is $350,000 per year, plus $31,500 per year for Maintenance Service Fees, subject to additional provisions permitting increased fees starting with Agreement Year 2. (TDLA ¶ III(a)).

13. The license fee for SAG's distribution and sublicense of an Embedded Version of FICO Blaze Advisor in a system that exceeds the Maximum Rule Limit is subject to the fees set forth in the TDLA for the "Bundled Version." (TDLA ¶ II(a)(2)).

14. The license fees for SAG's distribution and sublicense of the "Bundled Version" of FICO Blaze Advisor are based upon either (1) per processor-based pricing, which is calculated based upon the "level of sales effort provided by SAG and the particular level of support to be provided [by FICO]" as set forth in the table in TDLA ¶ III, and based upon a calculatory base price as listed in attachment A to the TDLA, and further subject to SAG's standard License and Pricing Policy to determine the final List Price. (TDLA ¶ III(b)(1)); or (2) non-processor-based pricing, which is calculated based upon the "level of sales effort provided by SAG and the particular level of support to be provided [by FICO]" as set forth in the table in TDLA ¶ III, and further "based on a price and scope agreed between the parties and as listed in an Order Form . . . executed by the parties that references and incorporates this Agreement and describes the Licensed Software and services being provided." (TDLA ¶ III(b)(2)).

4

15. The Maximum Rule Limit in the TDLA limits the sublicenses available pursuant to the "Embedded Version" annual fee to those end users with relatively simple systems, requiring no more than 250 rules. The Anti-Circumvention Provision in the TDLA ensures that end users cannot simply circumvent the Maximum Rule Limit in order to avoid paying the higher licensing fees required for an unlimited license.

16. The TDLA further requires that when distributing or sublicensing the FICO Blaze Advisor software to end users, SAG "shall enter into, and shall ensure that its Distributors enter into, a binding, written agreement with each End User which contains terms that are no less restrictive than those contained in this Agreement and the minimum End User License Terms attached hereto as Attachment B." (TDLA Terms and Conditions ¶ 2.3).

17. The End User License Terms set forth in Attachment B to the TDLA include essentially the same Maximum Rule Limit and Anti-Circumvention Provision found in the TDLA. (TDLA Attachment B ¶ (10)).

18. The End User License Terms further provide that "[f]or use of more than Maximum Rule Count, the End User has the right to purchase an unlimited version of Licensed Software." (TDLA Attachment B ¶ (10)).

19. Under the TDLA, "SOFTWARE AG means SOFTWARE AG . . . and its Subsidiaries." (TDLA Terms and Conditions ¶ 1).

20. Under the TDLA, SAG may appoint Distributors "to distribute and sublicense the Licensed Software in Executable Code as part of the Integrated Product of End Users . . . ." (TDLA Terms and Conditions ¶ 2.2). According the TDLA, "[b]efore distributing the Licensed Software to any Distributor . . . , Software AG must enter into a binding, written agreement with such Distributor . . . which contains terms that are no less restrictive than those contained in this

Agreement and Software AG shall be fully responsible for the acts and omissions of any such Distributor . . . ." *Id.*

## SAG'S CONTRACT WITH USTRANSCOM

21. The United States Transportation Command ("USTRANSCOM") is a United States Department of Defense agency charged with relocating all military personnel. In the summer of 2012, FICO worked with SAG's United States subsidiary, Software AG Government Solutions, Inc. ("SAGGS"), to demonstrate FICO Blaze Advisor and SAG's software to USTRANSCOM.

22. FICO subsequently learned that in June 2013, USTRANSCOM issued a sole source award to SAG, which included the use of "Fair Isaac Blaze Advisor." On information and belief, the initial award to SAG was valued by USTRANSCOM at $35.5 million. On information and belief, USTRANSCOM planned to deploy SAG's system, including FICO Blaze Advisor, on 166 processors. FICO does not know the number of USTRANSCOM processors on which the system has been deployed to date.

23. FICO approached SAG to inquire as to the terms of SAG's contract with USTRANSCOM to determine the license fees to be paid for use of the FICO Blaze Advisor software (and other FICO software). SAG informed FICO that USTRANSCOM's needs would be met by the Embedded Version of the FICO Blaze Advisor software, pursuant to the annual fee, and no addition license fees would be forthcoming.

24. USTRANSCOM retained Science Applications International Corporation ("SAIC") as the systems integrator for the overall USTRANSCOM project. In September 2013, SAIC entered into a subcontract agreement with FICO to provide a FICO technical consultant to assist with the FICO Blaze Advisor implementation at USTRANSCOM. On information and

belief, SAIC also entered into a subcontract with SAGGS for technical assistance related to the implementation of SAG's system at USTRANSCOM.

25.   In February 2014, during development and implementation of FICO Blaze Advisor for the USTRANSCOM systems, Blaze Advisor's license key automatically triggered an alert that the Maximum Rule Limit was being exceeded and that a broader FICO Blaze Advisor license was required.

26.   The FICO consultant working with SAIC and USTRANSCOM personnel to implement the USTRANSCOM system, referred them to FICO sales personnel, to permit SAIC and USTRANSCOM to assess licensing options to permit them to deploy a system that could legally exceed the Maximum Rule Limit.

27.   Subsequently, FICO became aware that, rather than obtain a license to the FICO Blaze Advisor software that permitted unlimited rule deployment, SAIC and SAGGS implemented the USTRANSCOM system to use the FICO Blaze Advisor software in a manner that would circumvent the Maximum Rule Limit by breaking up the rules into smaller pieces and smaller subsets, which then permitted the USTRANSCOM systems to operate while exceeding the Maximum Rule Limit.

28.   FICO personnel contacted SAG/SAGGS, SAIC, and USTRANSCOM to notify them that they were operating the FICO Blaze Advisor software in a manner that circumvented the Maximum Rule Limit, in violation of the terms of the license granted to SAG under the TDLA.

29.   FICO subsequently received a copy of the Software License Agreement between SAGGS and USTRANSCOM, which provided that the FICO Blaze Advisor license was subject

to the Maximum Rule Limit, but which omitted the Anti-Circumvention Provision required by the End User License Terms of the TDLA.

30. On July 2, 2014, FICO, provided SAG written notice of breach of a material term of the TDLA, as required by Terms and Conditions ¶ 6.2. (July 2, 2014 Letter attached as Exhibit A). The breach was not cured during the thirty day period set forth in the TDLA, and SAG remains in breach of a material term of the TDLA.

## FICO'S RIGHTS IN CERTAIN WORKS

31. FICO has obtained valid Certificates of Copyright Registration covering FICO's Blaze Advisor software, as identified at Exhibit A (the "Works").

32. FICO has invested substantial time and resources in developing the FICO Blaze Advisor software. Under the terms of the TDLA, FICO granted SAG a limited license to use, distribute and sublicense the FICO Blaze Advisor software, as specifically detailed in the terms of the TDLA, and as described above.

33. As described above, SAG has sublicensed the Works to USTRANSCOM through its subsidiary SAGGS, under terms that exceed the license granted to SAG by the TDLA.

34. Accordingly, SAG has infringed and is infringing the copyrights to FICO's Works by allowing unauthorized reproduction and distribution of the Works, and has contributed to and induced infringement by end users, including without limitation USTRANSCOM.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 106 and 501)

35. FICO re-alleges and incorporates by reference the allegations of paragraphs 1 through 34 as if set forth fully herein.

36. FICO is, and at all times has been, the copyright owner with respect to the Works identified in Exhibit A attached hereto, each of which is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights, also identified in Exhibit A.

37. The unauthorized copying and distribution of FICO's Works by Defendant infringes FICO's exclusive copyright interests in those Works.

38. Defendant has knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests, and FICO has been damaged and continues to be damaged thereby.

39. Defendant's aforesaid conduct has been and continues to be intentional, willful, deliberate, and with full knowledge of FICO's copyright interests and the infringement thereof.

40. The aforesaid acts of Defendant have caused and will continue to cause damage to FICO in an amount to be determined at trial.

41. The aforesaid acts of Defendant has caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to FICO for which FICO has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

42. FICO re-alleges and incorporates by reference the allegations of paragraphs 1 through 41 as if set forth fully herein.

43. FICO and SAG entered into a TDLA that provided for limitations on the scope of sublicenses of FICO's software to SAG's Distributors and End Users, and required that SAG include those limitations in its end user agreements.

44. The TDLA is a valid, enforceable contract.

45. FICO has at all times complied with its obligations under the TDLA and is willing and able to perform any remaining obligations.

46. SAG is in breach of TDLA §§ II and III, and TDLA Terms and Conditions ¶¶ 2.1, 2.2, and 2.3 by, among other things, (1) failing to flow down all of the End User License Terms found in Attachment C to the TDLA to its end users; (2) sublicensing the FICO Blaze Advisor software for use by End Users and permitting use of the FICO Blaze Advisor software by End Users exceeding the limited license provided by the TDLA; and (3) sublicensing the FICO Blaze Advisor software for use by End Users and permitting use of the FICO Blaze Advisor software by End Users outside the limited license set forth in TDLA Terms and Conditions ¶ 2.1 for use as "part of the Integrated Products" as defined by TDLA § II(a).

47. Specifically, SAG has breached Sections II and III and TDLA Terms and Conditions ¶¶ 2.1, 2.2, and 2.3 by (1) failing to ensure inclusion of the provision barring circumvention of the Maximum Rule Limit in, at least, SAGGS's end user agreement with USTRANSCOM, (2) sublicensing the FICO Blaze Advisor software to, at least, USTRANSCOM for use exceeding Maximum Rule Limit and therefore exceeding the scope of the limited license provided by the TDLA; (3) permitting use at least by USTRANSCOM of the FICO Blaze Advisor software that circumvents the Maximum Rule Limit, thereby exceeding the the scope of the limited license provided by the TDLA; (4) sublicensing the FICO Blaze Advisor software to at least USTRANSCOM and permitting its use in systems where the Blaze Advisor software is not used as "part of the Integrated Products" as defined by TDLA § II(a), but paying only the license fees required under TDLA § III(a).

48. SAG's breaches are material.

49. FICO provided notice of SAG's material breaches in its July 2, 2014 letter, in compliance with TDLA Terms and Conditions ¶ 6.2.

50. SAG has not cured the noticed breaches.

51. FICO has suffered and will continue to suffer harm by SAG's breaches of the TDLA, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52. FICO re-alleges and incorporates by reference the allegations of paragraphs 1 through 51 as if set forth fully herein.

53. According to Paragraph 13.6 of the TDLA Terms and Conditions, the TDLA is governed and construed in all respect in accordance with the laws of the State of New York. The covenant of good faith and fair dealing is implied in every contract governed by the New York law.

54. FICO complied with all requirements of the TDLA and acted in good faith in connection therewith.

55. SAG undertook actions in connection with end user agreements for distribution and sublicense of FICO Blaze Advisor software that had the purpose of frustrating the TDLA's Maximum Rules Limit and Anti-Circumvention Provision.

56. Through its agreements with end users evading the Maximum Rules Limit and Anti-Circumvention Provision, SAG sought to evade the express licensing provisions of the TDLA.

57. As an example, SAG sought to evade the Maximum Rules Limit and Anti-Circumvention Provision by failing to ensure that the Anti-Circumvention Provision was included in the agreement between SAGGS and USTRANSCOM.

58. As a result, FICO has been deprived of significant licensing revenue to which it is entitled under the TDLA.

59. Accordingly, SAG is liable to FICO because of its breach of the implied covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION
## ACCOUNTING

60. FICO re-alleges and incorporates by reference the allegations of paragraphs 1 through 59 as if set forth fully herein.

61. SAG acted in a confidential or fiduciary capacity to FICO.

62. SAG breached the duty imposed by that relationship with respect to distribution and sub-license agreements, and licensing fees owed to FICO.

63. FICO is therefore entitled to an accounting of (a) all distribution and sub-license agreements entered into by SAG or its Subsidiaries, Distributors, or Sales Partners on the one hand, and End Users on the other hand ("End User Agreements"); and (b) all licensing revenues, licensing fees, maintenance fees, and any other revenue received through those End User Agreements.

## FIFTH CAUSE OF ACTION
## UNFAIR COMPETITION

64. FICO re-alleges and incorporates by reference the allegations of paragraphs 1 through 63 as if set forth fully herein.

65. FICO has invested time, labor, skill, and other expenditures in the development of its software products, including the FICO Blaze Advisor software.

66. Upon information and belief, SAG entered into the TDLA with the intent to distribute and sub-license FICO software, including the FICO Blaze Advisor software, to end users.

67. On information and belief, SAG then misappropriated FICO's Blaze Advisor software by distributing and sublicensing the software to end users in a manner that led to the circumvention of the Maximum Rule Limit.

68. On information and belief, SAG acted in bad faith in misappropriating FICO's Blaze Advisor software, and in distributing and sublicensing the software to end users in a manner that led to the circumvention of the Maximum Rule Limit.

69. On information and belief, SAG has benefited from its misappropriation of FICO's software by retaining licensing fees paid for software that should have been remitted to FICO.

70. FICO has been damaged by this misconduct in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, FICO prays for judgment as follows:

A. That SAG has infringed the copyrights to FICO's Works, causing harm to FICO, and granting preliminary and permanent injunctive relief providing that Defendant is enjoined from directly or indirectly infringing the copyright on FICO's Works; and

B. That SAG has infringed the copyrights to FICO's Works, causing harm to FICO, and awarding damages, at its election, of either: (i) actual damages and all profits

derived by Defendant as a result of its copyright infringement, pursuant to 17 U.S.C. §504(b), or (ii) statutory damages pursuant to 17 U.S.C. §504(c);

C. That SAG has breached the TDLA causing harm to FICO, and awarding FICO damages in an amount to be determined at trial;

D. That SAG violated the covenant of good faith and fair dealing implied in the TDLA, causing harm to FICO, and awarding FICO damages in an amount to be determined at trial;

E. That FICO is entitled to an equitable accounting of (1) all distribution and sub-license agreements entered into by SAG or its Subsidiaries, Distributors, or Sales Partners on the one hand, and End Users on the other hand ("End User Agreements"); and (2) all licensing revenues, licensing fees, maintenance fees, and any other revenue received through those End User Agreements;

F. That SAG has engaged in unfair competition based upon misappropriation of FICO's software, causing harm to FICO, and awarding damages in an amount to be determined at trial;

G. That equitable relief is necessary because relief at law is inadequate, and therefore, granting FICO injunctive relief preventing SAG from continuing to use, distribute, and sublicense FICO's software products in violation of the terms of the TDLA;

H. That FICO be awarded its attorneys' fees and costs; and

I. That FICO be awarded such other and further relief as this Court deems just and proper.

Dated: September 8, 2014                                    Respectfully submitted,

FAIR ISAAC CORPORATION

_____

Christopher L. McArdle
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9542
Facsimile:  (212) 210-9444

*Attorneys for Fair Isaac Corporation*